Landis *v.* Landis.

MATILDA T. LANDIS

*v.*

CHARLES K. LANDIS et al.

The rule that equity sees through disguises, and deals with the substance rather than with the form, applied to a suit brought by a sister holding a responsible and trusted position in her brother's family, against that brother and one B., who had been for years his confidential clerk &c., to annul a transfer of certain lots of land on an island and some shares of stock, made by the brother to B. as compensation for his obtaining the titles of the several owners of the island, which the complainant claims was done for her benefit, but which the evidence shows was, in fact, for her brother's, and the transfer was sustained upon the ground that the enterprise was not, in reality, complainant's, but her brother's; and, further, that even if it had been hers, she

had, by writing, authorized her brother to obtain these titles, and he, in turn, had employed B., who did obtain them, and his compensation therefor, represented by the transfer now assailed by complainant, seems not undue.

Bill for relief. On final hearing on pleadings and proofs.

*Messrs. Leaming & Black*, for complainant.

*Mr. D. J. Pancoast*, for John L. Burk.

THE CHANCELLOR.

A large part of the very great amount of testimony which has been taken in this suit has no manner of relevancy whatever to the issue, and appears to have been introduced merely for the purpose of spreading upon the records the individual complaints of the defendant Charles K. Landis against his codefendant, John L. Burk, in matters obviously having no pertinency whatever to the subject of this controversy, and the court has consequently been compelled to spend a great deal of time in reading this impertinent, useless, and often scandalous matter. It is to be regretted that counsel did not, under the rules of the court, resist the introduction of the objectionable testimony by bringing before the court for adjudication the question of its admissibility, so that it might have been kept out of the cause, and the record might not have been encumbered with it.

The suit is brought by Matilda T. Landis against her brother, Charles K. Landis, and John L. Burk, to set aside, as having been given without authority or consideration, a sealed instrument of writing, made on the 7th of April, 1879, by Charles K. Landis (by whom it was drawn), as attorney in fact for the complainant, and delivered to Burk. It recited that Burk and his wife had executed a deed to the complainant, dated March 19th, 1881, for a certain island or beach called "Ludlam's Island," for and in consideration of $58,000, and then declared that that instrument witnessed that that consideration was payable by transferring $40,000 of the capital stock of the Sea Isle City Improvement Company, New Jersey, and forty town

lots as laid out upon the town plot of Sea Isle City, south of the railroad, to be selected for Burk or his assigns by Charles K. Landis, attorney in fact for the complainant, and it provided that deeds for the lots should be passed on or before the 1st of July then next. The bill states that on or about the 30th of October, 1879, Landis agreed with the complainant to purchase Ludlam's Island for her ; that it was agreed between them that she should advance the necessary funds to secure title to the property, and that she did so by paying to Landis $1,596 ; that she was to take the property subject to such mortgage as might be placed thereon to raise purchase-money ; that, under the arrangement, Landis began to obtain title from the different owners through Burk, who was then, and for fifteen years previously had been, in his employ as bookkeeper and clerk, and who continued therein up to the first week in May, 1881, or thereabouts, and was regarded as a suitable person to obtain the title, and that it was understood and agreed that she should in no wise be bound or liable to pay Burk, but that whatever compensation should be due or should be paid to him, should be paid by Landis.

The bill further states that on or about the 30th of October, 1879, Burk made and executed an instrument in writing or declaration of trust, under seal (to which his wife, under her seal, subscribed her consent), which recited that he had taken the title by sundry deeds to certain interests in a property in Cape May county, in this state, known as Ludlam's Island, described as containing one thousand five hundred acres, more or less, and that, in order to perfect the title, he was to receive sundry other deeds in his name, and thereupon it witnessed that the titles were taken in trust for the complainant, and Burk thereby promised and agreed to convey them, or any part thereof, to her or to any other person upon her order, or to her heirs or assigns. The bill further states that on or about the 19th of March, 1881, Burk and his wife executed and delivered a quit-claim deed to the complainant for the property, subject to a mortgage to one Abigail Wright for $10,000 ; that she then owed Burk nothing for money expended or services rendered in

procuring the titles, and though the consideration stated in the·
deed was $58,000, it should have been only $11,596, of which
$10,000 were the amount of the mortgage, and the rest, the·
$1,596, advanced by her; that she was not indebted, either to·
Landis or Burk, in the sum of $58,000, or any other sum, for
the land, and that when she took the conveyance from Burk,
she assumed the payment of the mortgage. The bill further·
states that on or about the 21st of March, 1881, she sold the·
northeasterly portion of the island, embracing about nine hun-
dred and sixty acres, to the Sea Isle City Improvement Com-
pany, a corporation under the laws of this state, for the con-
sideration of $10,000, and nineteen thousand eight hundred
shares of the full-paid stock of the company, at the par value·
thereof, $50 a share; that that stock is in the hands of Landis,
but that she is the lawful owner thereof; that she was desirous
of selling more of the property, and therefore gave Landis, on
or about the 21st of March, 1881, a power of attorney, whereby
she irrevocably empowered him, as her true and lawful attorney,
to sell, grant·or lease, by deed or otherwise, all the tract, or any
part thereof, to such person or persons, and in such tract or
tracts, as he might deem expedient, for such consideration and
upon such terms as to him might seem meet; that the power
was given, in order that the land, or portions thereof, might be
sold, and money or valuable securities be obtained therefor, to·
pay off the mortgage and make improvements. The bill further
alleges that on or about April 7th, 1881, she was surprised to·
find that Landis had, as her attorney, given to Burk the before-
mentioned instrument for the payment of the $58,000 considera-
tion expressed in the deed from Burk to her, by the transfer of
$40,000 of the stock of the Sea Isle City Improvement Company,.
and the conveyance of forty town lots upon the town plot of Sea
Isle City. The complainant alleges that Landis had no author-
ity to give that instrument, and that it was given without her·
knowledge or authority, and without any consideration whatever.
The bill prays that Landis may be enjoined from transferring
the stock and conveying the lots to Burk, and the latter from
granting any right or interest he may claim in the lots or stock;

that the instrument in question may be declared void and be canceled, and that Landis and Burk may be decreed to pay her her damages which she has sustained by reason of the making of that instrument.

The proof shows that in the spring of 1879 Landis entered upon the enterprise of purchasing, for a pecuniary speculation, Ludlam's Island, and converting it into an attractive place of summer and winter resort. He employed Burk, who then was, and had been ever since May, 1865, in his employ as clerk and bookkeeper, to get the requisite information of the title (the land was held by various owners), and to purchase the property. By the arrangement, Burk was to take title in his own name. Burk says that the arrangement between him and Landis was that he (Burk) was to ferret out the title and buy the different interests in the beach; that Landis was to advance the money, and Burk was to have a half interest in the property; that his work in the matter was to be independent of, and additional to, his employment as bookkeeper &c. for Landis, and that the half interest was to be given him in consideration of his extra work in ascertaining and obtaining the title. He began to buy (purchasing and taking title in his own name) about the 10th of April, 1879. After he had secured about sixty-five hundredths of the property, Landis requested him to execute a declaration of trust of the property in favor of the complainant. Burk says that the reason Landis gave for using her name was that, if people found out that he (Landis) was going to have an interest in the property, his creditors might harass him. Burk says that Landis also said that he would give him (Burk) a paper showing his (Burk's) interest in the enterprise, but he says Landis never did it. He also says that the owners of the Ludlam's Beach property were scattered throughout the country, and that Landis said that, as he (Burk) had to do a great deal of traveling, he wanted to have the paper (the declaration of trust) executed, to protect his interest in case anything should happen to Burk; and said that he would not use the declaration unless something happened to Burk, or he should be obliged to do so as a matter of protection to himself in financial matters. According to the

request, Burk executed the declaration. It is dated October 30th, 1879. It was not acknowledged, but was proved March 12th, 1881, by certificate recorded March 7th, 1881, and filed in the secretary of state's office March 10th, 1881.

The Sea Isle City Improvement Company was incorporated with a capital of $1,000,000, divided into twenty thousand shares, of $50 each, and was to commence business when the sum of $10,000 should have been paid in. · Two hundred shares were subscribed, of which one hundred were subscribed by Landis and ninety by Burk, and five other persons subscribed two each. By deed of March 19th, 1881, Burk and his wife released to the complainant all their interest in Ludlam's Island for the consideration, as expressed in the deed, of $58,000. The deed was acknowledged on the same day, but was not recorded until the 7th of April following. It was executed at the request of Landis, who, at the delivery thereof, gave to Burk the instrument of writing which this suit is brought to annul, and which Burk says he unwillingly accepted, since he then had nearly completed the work of obtaining the title to the island. According to his testimony, he was, by the bargain made between him and Landis at the outset, to have half of the results of the enterprise for his compensation. The instrument was drawn by Landis himself. It declares that, in consideration of the conveyance, Burk is entitled to $40,000 of the stock and forty town lots, as laid down on the town plot of Sea Isle City—the lots to be selected for Burk by Landis, and to be conveyed on or before July 1st then next. Landis, in accordance with that declaration, did, in fact, select the lots for Burk. The instrument in question was, according to Landis's own testimony, given voluntarily, and not under any manner of coercion. Landis says that he thought it was valid, and that he intended to carry it out in good faith up to the time when Burk left his employ, which was not until May 18th, 1881—over a month afterwards. The complainant says she did not hear of the instrument until after her brother had discharged Burk.

Although the suit is, ostensibly, against Landis as well as Burk, it is not only thoroughly amicable, so far as the former is

concerned, but it manifestly is, in fact, his suit. It is impossible not to conclude, from the reading of the testimony, that the enterprise of buying Ludlam's Island and establishing there a seaside city was Landis's, and not the complainant's. The latter (as before stated, she was his sister) had occupied a very confidential relation to Landis, not only in his family, but also in his business, for she had held the title to a large part of his property for him. He says it was in pursuance of a plan for giving his father, mother and sister (the complainant) the benefit of his property, to the exclusion of his wife, in case he should predecease her; but Burk says it was done to put the property out of the reach of Landis's creditors.

Landis conveyed by voluntary conveyances, in February, 1879, to his father and mother, parts of his property. He also, at that time, conveyed to the complainant a very large amount of his real estate, for the expressed consideration of over $100,000, taking from her therefor mortgages for the full amount of the purchase-money, payable in seven years. It would seem that this arrangement had reference to something else than any claim his wife might make, seeing that there was, as he testifies, an ante-nuptial agreement between them and jointure in lieu of dower, which was, as he says, ratified and confirmed by act of the legislature. But, whatever may have been the motive, the transaction is important as showing the confidential relations between the parties. The complainant says there was no understanding between her and Landis on the subject, but that he conveyed the property to her for considerations of his own. As to the transactions under consideration in this case, it appears from her own testimony that the enterprise was Landis's and not hers. She says that she advanced $1,596; that he had the money in his possession, and she allowed him to take it and use it; that he stated to her all the particulars of "his" enterprise, and she encouraged him in it. The money to which she refers—the $1,596—was money which she says she saved from a yearly income of $1,500, given to her by Landis, in whose house she lived, and of which and of his two children she had charge. Again, speaking of the enterprise, she says that Landis explained

to her the offer that had been made to him by members of the
Pennsylvania Railroad Company, if he would take one of the
islands and develop it into a summer and winter resort; that she
knew that it was a business of which he had made a specialty,
and which he thoroughly understood, and that she encouraged
"his" undertaking, and told him he could make use of the
money of hers that he then had in his possession.  To the ques-
tion whether he gave any reason why he did not intend to use
his own money and conduct the enterprise, as he had the others
before that, for his own benefit, she replied that she had the ready
money, and that in order to compensate her he put the title in
her name.  She says, also, that her brother has been very grate-
ful to her for her services to him under very trying circumstances,
and has always appeared as if he could not do enough for her to
compensate her, and she adds that, in taking her into this enter-
prise, he knew that he would be as much benefited himself as
she would be.  It seems questionable, to say the least of it,
whether she, in fact, advanced any money at all for the enterprise.
Burk swears that the property conveyed by him to the complain-
ant cost, in the way he got it, only about $6,800, and that he got
$7,950 from the $10,000 loan upon mortgage on the property.
Landis says that the agreement between him and the complainant
was made about April or May, 1879; that just previous to that
time he had been engaged with a gentleman, whom he named, in
getting up a company for the cremation of the street garbage of
New York city, and that the charter of the Philadelphia and Cape
May Short Line Railroad Company, of which he was president,
had been repealed by the legislature of this state, and that those
two enterprises had consumed considerable of his ready money,
and that, with that fact existing, and the uncertain condition of
his health, he was compelled to use some of the money of the
complainant, and he thought it might be just to her as well as
safe for the enterprise that she should be proprietress of it, trust-
ing to her to make full compensation to him for what he should
do.  It is most manifest that the enterprise was, in fact, his.
He exercised the most absolute and complete control over it,.
never consulting the complainant at all.  He says that whilst

he was getting the title to the property, he offered a Mr. Houston half of the island in consideration of his raising $1,000,000 for improvements. He made, in his own name, a settlement (in compromise of a suit) with Henry Whelen, without the knowledge of the complainant, and without consulting her, by which he agreed to transfer to Whelen $100,000 of the stock of the Sea Isle City Improvement Company, and to convey to him half of the island remaining after the conveyance to that company, and he executed the agreement by transferring the stock and making the conveyance without the complainant's knowledge or consent. The settlement appears to have been the compromise of a suit brought in the United States circuit court for the district of New Jersey against Landis and the complainant, and Burk and the Sea Isle City Improvement Company, to enforce an agreement made by Landis with Whelen, by which the latter was to be entitled to half of the whole property when acquired. The complainant has never called Landis to any account for the enterprise or his transactions therein. She testifies that she does not know how many lots he has sold, nor how much has been realized from the sale of lots, nor what profit has been made from the enterprise, and she says that he is still managing it.

But, further, by an instrument of writing (therein declared to be irrevocable without his consent), dated March 12th, 1881, and made before the conveyance by Burk to her, she agreed with Landis, in consideration of $1 and of his devoting his time and attention to the sale of lots and to the development and improvements of the island, that "upon the payment to her, in whole or in part, the cost of the island, until the entire cost of it should be paid, and the additional sum of $5,000, with interest, to allow him all over and above such cost, that he might be able to sell the island for, in whole or in part, he agreeing to start companies upon the same, and to give the said business attention personally or by his agents." Nine days afterwards, and two days after the date of the conveyance by Burk to her, the complainant gave to Landis an irrevocable power of attorney to sell, grant, convey and lease the property at his discretion &c. &c. It is impossible to avoid the conclusion that the enterprise was, in fact, altogether

Landis's own, and that he was the principal, and not the mere agent.   Equity sees through disguises, and deals with the substance rather than with the form.

But further.   Assuming that the complainant was, in fact, the principal, she is entitled to no relief.   Landis made the bargain with Burk for his services in the matter of ferreting out the owners of the land constituting the island, and obtaining deeds from them.   Burk was and had been in Landis's employ as clerk, bookkeeper, cashier, conveyancer and agent for selling his land, from May 26th, 1865, and at times, during Landis's absence, had acted as attorney in fact for him.   He was, when the business in question began, rendering service to Landis as confidential clerk and bookkeeper, at a salary of $1,100 a year and his house rent.   The undertaking to ascertain who were the owners of the land, and to obtain conveyances from them for their respective interests, was not within his employment as clerk and bookkeeper, cashier, conveyancer or agent to sell land, and was a work requiring much inquiry, travel and negotiation, not to speak of skill in bargaining.   He was to take the title to the property in his own name, and he not only did so, but he gave mortgages upon it to raise necessary purchase-money.   He swears that the bargain was that he was, for his services, to have half of the results of the enterprise.   That this is true, and that it was not understood between Burk and Landis that the former was to render his services in the matter without any extra compensation above his salary as clerk &c., is evidenced by the fact that Landis voluntarily gave him the instrument of writing in question in this suit.   Burk swears that the cost of the forty lots which, by that instrument, were to be conveyed to him, was only, at a high estimate, about $35, and that the stock had no immediate value, inasmuch as there was a mortgage of $10,000 upon the property conveyed to the company, and the property was nine hundred and sixty-three acres of unimproved beach, strand and marsh.   It appears that he was engaged in this business of getting titles for about two years, and his "brief," as he calls it, of the titles covered five hundred and sixty

pages.  The bill speaks of the island as containing one thousand and five hundred acres.  Burk says that the title was held by four hundred different persons in different parts of the United States.  He swears, it may be added, that he invested $300 of his own money in the enterprise.  When it is considered that Landis gave Whelen $100,000 of the stock and half of the land in the island remaining after deducting the nine hundred and sixty-three acres conveyed to the Sea Isle City Improvement Company, in compromise of his suit, and that Landis insists that Whelen had no interest in the property, except under the loan of $10,000, which was secured by mortgage, and, therefore, that the suit was groundless, it would seem that both land and stock were of but little value.  Landis had authority to employ Burk to get the titles and hold them in trust.  The agreement of March 12th, 1881, by which the complainant grants all the proceeds of the property to Landis, after paying her the cost and $5,000 and interest, states that Burk had been securing title to the land.

The declaration of trust states that he had taken title by sundry deeds of certain interests in the land of the island, and that, in order to perfect the title, he was to receive sundry more deeds in his own name.  It is entirely clear that the work of ascertaining and getting the titles was Burk's, and in no sense that of Landis—done through the instrumentality of Burk as his clerk.  Burk acted as trustee in giving the mortgages which were given for the $10,000 loan.  If Landis had authority, as agent for the complainant, to employ Burk to do the business, he had authority also to agree with him for his compensation.  The instrument in question was given to fix and secure that compensation, and Landis says that when he gave it he thought he had authority to make it, or otherwise he would not have done it; and he further says that he executed and delivered it to Burk, thinking that it was valid, and intending to carry it out in good faith.  Landis employed Burk in the business about two years before the power of attorney was given, and he then made the bargain with Burk for the compensation of the latter for the

9

service.   The complainant has taken and still holds the benefit of the agent's services. · She can neither lawfully nor equitably withhold the compensation.

The bill will be dismissed, with costs.